17-3792 United States v. Bell, Mr. Newman, and Mr. Kuhn. Good morning, your honors. My name is George Newman and I represent Marquis Bell, the appellant. And I'm going to focus, if I may, on the first argument, which is the restraint, the physical restraint argument. And that certainly seems to be the I'm sorry, sir. That certainly seems to be the stronger of the two. Understood, your honor. So physically restrained is defined in Section 1.1 of the sentencing guidelines as physically restrained means the forcible restraint of the victim. And there's another phrase there. And if the government's position were correct, we wouldn't need that other phrase, such as being tied, bound or locked up. Now, I know there's a circuit split. Your honors know that it's almost evenly divided in terms of how the circuit courts, other than this court, which has not made this particular finding on this particular issue, how they view. So how should we think? How should we think about it? I'm sorry, sir. I said, how should we think about it? There are factors. Yes. Among the circuits that include the use of physical force, sustained focus on the victim, providing the victim with no alternative but compliance, exerting control over the victim by taking away their freedom of movement. One case we have is the placing the victim in a confined space. The Copenhager case. Active enclosing or confining a space or barrier, action or threat. Yes. That's a pretty good enclosure case, if you will. I agree that that's physical restraint. I think that I would divide, of course, the way the courts have dealt with this into two camps, of course. One is where the courts have very clearly said that you have to have more than just a threat. You have to have some kind of physical restraint. You have to have what in the guideline itself is something similar, at least, to being tied, bound or locked up. And I would argue that the circuits that said merely pointing a gun, particularly the Tenth Circuit, merely pointing a gun, I don't think they were really, with all due respect, reading that guideline and thinking about it in terms of statutory construction. Because if merely pointing a gun at somebody were enough, there's no need for such as being tied, bound or locked up. There has to be some behavior which is, if not actually tying, binding or locked up, at least cognitive to those kinds of activities. All right. So how about this? Rosario talks about stomping on – I guess it's not stomping, standing on someone's neck or throat specifically. Here we have grabbing the store clerk's neck and shoving him. What's the substantive difference that allows you to say that those aren't clearly one over the other and that the guideline should apply? I'm glad you asked that, Your Honor. In this case, the facts are – and I can go to page 7 of the sentencing notes where I read the victim's statement, what he actually told the police. I grabbed his arm. He hit me with the gun. That's when I knew it was fake. It was plastic. It broke. And part of it fell over here, pointing to the floor behind the register. That's when I saw the piece on the floor. I got up again to fight him, but he grabbed the money from the register and ran out the door. Prior to that, the evidence shows – the very limited evidence shows that Mr. Bell threw or pushed that gentleman to the floor. A gun point. He didn't grab him by the neck. He pointed the toy gun at him. He said at his neck, but he pointed it at him. He threw him to the floor, and then he went about his business of getting the money. But the register was right over him, though. He didn't throw him over in the corner and then walk over. He didn't take him anywhere. He just essentially knocked him out of the way. To the ground. Pardon? To the ground. To the ground. How does that not restrict his freedom of movement? I don't think so, because he immediately leaped up and began fighting, by his own account, with Mr. Bell. He was in no way restrained. There was not even an order from Mr. Bell saying, stay on the ground or I'll kill you, or stay on the ground or I'll do whatever, or stay there. There was nothing that restrained his movement. He was basically knocked out of the way. And this is pointing the gun, the fake gun, the toy gun at him, was essentially what I would say is psychological restraint, not physical. The man was in no way restrained. He was not, he was certainly not tied, bound up or confined. And I would ask your honors, why are those words in there if the behavior doesn't have to be, if not those specific acts, at least something similar to it? You know, they didn't say, it wasn't a polite conversation where he said, please go to the ground. I mean, come on, the guy's at gunpoint and thrown to the ground and then hit with a gun. Which fell apart. But yeah, I agree, this is not socially acceptable behavior. Do we really need to pick a side? I mean, in Copenhaver, we were pretty careful. We said we're not going to pick a side. And yet we applied, it seems, two factors. One was that the defendant had no alternative but compliance and that the use of force to impede others from interfering with the mission of the offense. Isn't that enough to just decide this case, just applying the Copenhaver factors without getting into it? I don't think so. I don't think so because he was not impeded from any further action, the victim I'm talking about. He obviously perceived that the gun was a fake and he jumped up and began struggling with Mr. Bell, who grabbed the money and ran. I mean, that's all it was. So I think that... You know, where are the records? You assumed in your brief that the entire time he knew it wasn't a real gun. I didn't see that. Where in the record does it say that? The record is extraordinarily brief. And frankly, I don't know that it's my burden to establish the facts of the conviction as they were. And even assuming that he didn't know that, for the sake of argument, that he didn't know that the gun was plastic very initially, he was still not restrained. He was still not confined. And he made the decision to get up and start fighting with Mr. Bell. So there had to be something in his mind. I mean, if I am on the floor, if I've been knocked to the floor and somebody's got a firearm and I'm looking at... I'm staying there. I'm not moving. Me too. I mean, I know firearms and you respect them. And clearly he didn't. But I don't think that's really what was necessary. I think what you have to find, I know you have to pick a side. I mean, I thought that as I walked up here, say, pick a side, but I get to argue. So I think it has to be something more similar to tied, bound, or locked up. It can't just be he's restrained in some manner. The Tenth Circuit has said merely pointing the gun is enough. And I disagree. I think that that makes the rest of the language in 1B1.1, the application note K, irrelevant. It makes it superfluous, such as being tied, bound, or locked up. There has to be more than that in order to have physical restraint. And remember, Your Honors, there was also an enhancement, which is in my brief, but unless you have questions, I'm not going to be arguing that, for brandishing or using the gun. So it's not as if somebody doesn't get punished for having a gun, either using it, brandishing it, or even firing the gun. There are various levels of enhancement. That's a four-level enhancement, right? I'm sorry, Your Honor? That's a four-level enhancement, is it not? Yes. So he's already been punished for that. So you're saying there's an overlap between the brandishing of the purported weapon and the physical restraint? If you take the Tenth Circuit's view, absolutely. Absolutely. It makes the rest of that language superfluous. And I don't think that's what the Sentencing Commission intended to do. I think when they gave those examples, they wanted that kind of behavior, not merely having a gun pointed at you, which is already the use of a dangerous weapon enhancement, which Mr. Bell got. So I think that if you don't construe it in this manner, as some of the circuit courts have said, practically every robbery is going to have physical restraint. It's built into its definition. The mere threat, a note, a demand note could be considered physical restraint in that situation, and I don't think that's what the Sentencing Commission intended. Your time is running out. Could you deal with the standard of review for this issue? Yeah, I'd be glad to. That could be dispositive. All the courts, including this court, as I understand it, have said that if the facts are not in dispute, and I don't think they were here. It was a guilty plea. It was a change of plea. And the government read in its very brief statement of facts, and at sentencing, I said what he actually said in his statement to the police. So the facts are not in dispute, and I think all circuit courts pretty much have said if the facts are in dispute, then of course it's a clear error standard. But if the facts are not in dispute, you're moving at least, or you're at de novo review. And I think because the facts are not in dispute in this particular case, I think it's de novo review. But may I add, as a partisan, I think under either standard that this is not physical restraint. I think whether you use the clear error or the de novo review standards, I think that you should not agree with the application. That is a bold statement. I'm sorry, Your Honor? That's a bold statement. Well, that's what I'm supposed to do, Judge. I don't know if the court has any other questions. I did ask to reserve three minutes for rebuttal. The question, I guess, on the standard review, it's a question. Is there, what is the finding of fact? And do you apply it, those facts that you do find, to the law in order to find that you qualify under the sentencing guideline? Or is physical restraint simply a finding of fact? If physical restraint is simply a finding of fact, then it's clear error. But if it's finding what the facts are and then applying it to what physical restraint means under the guidelines, one might argue that that's an application. It's hybrid, but there's an application of facts to law. And when it comes to the guidelines, then it becomes de novo. I think it's the former. I think that the facts were absolutely not in dispute. They were very clear. And it was the trial court's job to apply the law, the guidelines, to the facts that were not in dispute. Does this set of facts, is this physical restraint? I think it's clear it's de novo. You're familiar with Greer, right? I'm sorry, sir? I said you're familiar with Greer, correct? The case that I was looking at for the Third Circuit. The Third Circuit 2007 case, which says this court will continue to review factual findings relevant to the guidelines for clear error and to exercise plenary review over a district court's interpretation of the guidelines? Right. I was actually looking at Richards, which says the same thing. But yes, Your Honor. But I think in this case, that's what you're doing. You're applying the law to those facts, which is, as I understand it, de novo review. Thank you. Thank you, Your Honor. I always mispronounce. Is it McKeown? Good morning, Your Honor. Bernadette McKeown for the government. McKeown. We've had this discussion before. I know. I continually screw it up. I'm sorry. I'd like to start by addressing the standard of review. Because it is the government's position that the standard of review here for the court's application of the guidelines to the facts here is covered by the Richards deferential clear error standard. And in Richards, actually, it was a very similar argument presented by the defendant, which was that de novo review necessarily replied because the facts were not in dispute. And it was whether those facts fit within the guideline was a question of legal interpretation. And the court said no. Where the test is purely fact-driven and the facts are not in dispute, then the question becomes whether or not those facts fit the definition, rather than the abuse of discretion standard that would apply to the application of the guidelines to the facts, nor the de novo standard of review for an interpretation of the guideline. I'm so sorry. Tell me why this isn't us reviewing the district court's interpretation of the guidelines. The district court. In other words, what is the fiscal restraint? That this falls within the physical? That these facts fit the definition of physical restraint. Right. I mean, there's no dispute as to the facts. I think your adversary read in, you know, essentially what the facts are that we're dealing with. Isn't this a clear instance where we're being asked to interpret the guidelines, whether this set of facts falls within the physical restraint? I would say prior to Buford and Richards, that would be the way we would have approached this case. Buford first changed the landscape back in 2001. The Supreme Court looked at a fact-intensive-driven guideline analysis and said, this is better left to the district court. It's really not a question of legal interpretation. It's a question of whether or not these facts fit that guideline. It's not a purely legal determination. But the question we're wrestling with is, what does physical restraint of the guideline mean? That seems to be an interpretation of the guideline, and if that's correct, then that would seem to be de novo. If it is a purely legal guideline determination issue, then, yes, it would be de novo review. But it isn't? Our position is that it is clear error because of the Richards case, which had a very, very similar factual scenario. But it was whether or not the facts- Let's talk about Richards just for a moment. Let's just deal with this theoretically, right? I mean, we have a set of facts. There are no facts at- In dispute. In dispute. Correct. So, the district court has made a determination as to whether, given that set of facts, it falls within the ambit of a particular guideline enhancement. And we're reviewing that. I'm at a loss to see how that's not funded. As I said, Your Honor, I agree with Your Honor's statement. I think Richards changed the approach that's applied in many fact-intensive guideline scenarios. Should this court decide that this is one of those where the guideline is so vaguely defined that it requires legal interpretation, then, yes, de novo standard would apply. We believe that there's enough of a definition here. And it is similar to the leadership enhancement where they applied clear error review and other similar guidelines, sophisticated means, that it should be a clear error standard. With that said, I will take the same position as the defendant. If the judge committed clear error here, it's an abuse of discretion, then we're going to reach the same result. So, it really doesn't matter in the long run whether you apply clear error or not. We just take the position with fact-driven guideline positions at this point of cases that it's clear error review. When you're looking at the commentary that's at issue and that your adversary has brought to bear, and then the specific quote, which I think is probably the best recitation by the victim that's in the record, as I understand it, of exactly what happened, how can we look at that and say that that either reflects the commentary's view on physical restraint or reflects the other factual scenarios that we've been presented in the case law? Your Honor, I'd like to start by first talking briefly about the record, because that comment, the part of the statement that he read in, that's halfway through. And when you read that, go back and read it again and more carefully, what he's saying is, and when you go and you match it up with what was the uncontested facts in the plea agreement and the uncontested facts at the plea colloquy and in the PSR, the victim did not realize that the gun was fake until he had been thrown on the ground, the gun had been pressed to his neck, he was laying on the ground. He tried to interfere. This was a brave man. He tried to interfere with the defendant's ability to get into the cash drawer. He struck with the weapon, and he notices that a piece slides across the floor. That's when he decides to engage in a full-fledged struggle. So the victim, there is nothing in this record that suggests that the victim did not believe it was a real gun initially. And even the statement on page 55 of the appendix says, I grabbed his arm, and then he hit me, and then I realized it was a fake gun, and I got up. Well, let's take a step back. I know that your adversary focused on the toy gun, real gun. I'm not sure it's important to our discussion, because the question is, given his reaction, brave or otherwise, can we say that he was physically restrained? Right. Yes, sir. Right? So... Right. Exactly. Your Honor, here. So we have what was read into the record. I understand it's slightly different in your view than what's in the Folsom recitation in the record. What are the critical facts that this recitation doesn't have that would lead us on the Novo review to conclude that he was physically restrained? What is there different than what was recited? Right? And I think, just to refresh your recollection, to have it right in front of you, which I'm going to have right in front of me in a second, is, you know, I grabbed his arm. He hit me with the gun. That's when I knew it was fake. It was plastic. It broke. Part of it fell over behind the register. That's when I saw the piece on the floor. I got up again. So... Yes, Your Honor. If I can go back, as I said, that jumps in halfway through the victim statement. Yeah, yeah, yeah. So before that, we have the defendant approach this victim as he stands behind the cash register, point the gun at his neck, throw him on the ground. These are uncontested facts. It's in both the plea colloquy and the PSR. And then he is pointing the gun. He's still holding the gun when, for some reason, this victim decides that he's going to reach up and try to interfere with his ability to access the cash store. Why he does that, we don't know. Not until after then. So at this point, what we have is a defendant who approaches a victim with what appears, or at least ostensibly is meant to appear to be a real gun, presses it in the victim's neck, throws him to the ground. That is the use of physical force. And then restrains him, however momentarily. And it may have been just a short duration that this victim remains on the ground.  That's physical restraint. And it's your position that the guideline has already been satisfied. Yes. Okay. And the length of time is not, there's no temporal limitation on how long the restraint must last. I mean, the commentary would lead you to believe that it's more than momentary, right? I mean, you don't tie someone up momentarily. It's restraint that is necessary to facilitate the commission of the crime. If the restraint is only momentary and that facilitates the commission of the crime, his ability to grab that cash out of the drawer and successfully complete the robbery. Well, tell me then how you would differentiate in your mind the brandishing enhancement with the physical restraint enhancement in the following hypothetical, right? I'm a bank robber. Judge Ambrose in his second job works at a bank. Just a supplement. Congress already listening. And I do this momentarily and I push him lovingly. That's not how you usually do it, Joe. Wow. I have witnesses. Usually whoops on me. He was a catcher. Yes, I was. I'm going to get back to. Actually, I'll pick up on that because I have the same concern. Isn't there an overlap? But the guideline provides for this overlap. The guideline has specific enhancements for specific types of conduct. If you brandish or use a gun, you get, there's a certain enhancement that applies to that. This is whether or not this separate conduct, the physical restraint of the victim, the laying on of hands, the throwing to the ground, the pointing the gun at the victim to prevent him from interfering with the robbery in progress, the removal of the cash from the cash drawer. Yes, it is not akin to those examples in the guidelines. But every circuit, including the second circuit that has the most restrictive view of this enhancement, has said those are limitations. They're not limitations, they're examples. But none of the circuits have said, as you've suggested a few moments ago, that a momentary restraint satisfies. This issue was raised in the FOB case, F-O-P-P-E, a 1992 case in the Ninth Circuit, where this was squarely at issue. And the defendant's main argument was, you just did this momentarily, it wasn't of a long enough duration. What the defendant did there was approach a customer service area. He grabbed a customer who was sitting at a desk, told her to get up. She didn't move, so he put his hands around her neck and moved her a couple of feet, and then let go. At that point, he went to grab somebody else. That didn't work. His co-defendants, in the meantime, were able to get the money out of the drawer. In the meantime, they discover he has a hairbrush and not a gun. They do complete the robbery. But the court rejected specifically and said, there's nothing in the guideline that talks about time. It talks about whether or not the restraint enabled them to commit the crime. That's what happened here. I think that's an interesting case. It is an interesting case. I wouldn't argue that that's momentary. One getting down and putting one's hands around someone's neck and moving them is not what I would call momentary, particularly if I'm the one who has the hands on my neck. There was nothing in that record to show how long that lasted. But the argument was that the restraint was so brief that it didn't affect the… Yes, there's no question that the restraint here was brief, but our position is it was restraint. And there's no need for this court, as your honors have suggested, to take sides, so to speak. There are different camps here. We have the restrictive Second Circuit view. But really, everything, when you look at the case law, it's very fact-intensive. There is no comprehensive test. The broadest test is simply when you restrict somebody's movement by use of a gun. But my concern is the same as Mr. Newman said. If we rule in your favor, down the road, every single time you have a gun and you get an enhancement for a gun, you're going to have an enhancement for physical restraint. That can't be right. That isn't what the sentencing guidelines meant. When they say specifically that it's essentially, and they give examples, taking somebody to the back room and locking them up type of thing, that doesn't appear to be what we have here. As I readily concede, this is not the equivalent of the examples. However, they are examples. And what the courts who have applied a broader test have done have actually looked at the definition of restraint. But the question is how do the examples paint the picture? In this case, I think you've got a very strong argument that even though there was a toy gun, you have a four-level enhancement for brandishing or use of a weapon. But I have a real problem with the physical restraint here. Can I just answer Your Honor's previous question about why wouldn't this apply in every robbery? Because I don't believe that it would. How would you not? I think it would if what we have before us is a scenario where somebody walks in, just displays a gun and says, nobody move. That's the Fourth, Tenth, and First Circuit, the ones who have the broadest view of this enhancement. Those aren't our facts here. Yes, there is an argument there that that might apply in every robbery case, as the Second Circuit very forcefully found, that that was just not sufficient. But here we have somebody actually physically laying hands on, throwing a person to the ground, pointing a gun at them, and standing over them. This is not going to occur in every robbery. So every time you go in to do a robbery and you hit somebody, it's a physical restraint? No, if he had just hit him and not put him on the ground in a specific position so he couldn't interfere with the robbery, we'd have a different argument. Well, he did interfere with the robbery. But as this court has noted, it was in the abduction context, the related concept of abduction, where one of the victims, this is a Smith case from 2014, fought back the whole time. She disregarded. He kidnapped her, put her in a car, drove her to the bank and was going to have her open the vault. She disobeyed all the things and managed to escape. And as the court emphasized, the boldness of the victim's actions do not lessen the defendant's culpability. The focus should be on the defendant's actions, not how this victim, for whatever reason, being a brave or bold person, decided to interfere with this robbery. As we think about this and try to, as we do or want to do, form some sort of test, right, if you look at the factors that other circuits have considered, the use of physical force, sustained focus on the victim for some period of time, providing the victim with no alternative but compliance, exerting control over the victim by taking away their freedom of movement. You know, obviously, we've talked about Copenhagen, which is the confined space. And that seems to be a pretty broad assessment of the different factors. What should we be looking at to try to best capture this notion of this amounts to physical restraint and this does not? Well, I don't think that it's necessary for the court to try and come up with a definitive test or a broad standard. The question here is, does this fit within the parameters of this guideline, based on this court's interpretation and perhaps of the other courts? Well, if it was this court's, it would be Copenhagen. Well, Copenhagen, but there the court stressed that many courts have found, and cited approvingly, the use of force to impede others from interfering with the commission of the offense. That's what we have here. We have the use of physical force to try to prevent this victim from interfering with the commission of the offense. That's physical restraint as many courts have found it. That's the core physical restraint. The question is, do you need more because of those examples? And we would suggest that you don't. There's no doubt this is physical, but is it restraint? Is it the type of restraint the sentencing guidelines are contemplating for a two-level enhancement? And that's the problem we're having. Well, our position would be, Your Honor, that it is enough to constitute restraint because of the placement on the floor directly below the defendant for the purpose of him being able to access that cash drawer unimpeded. So it's that extra element. If he had just walked in and said, Get down on the floor over there, we would not be having the same argument. Certainly, we might not be having an argument at all, but here there is that extra variable, and we believe that's sufficient for physical restraint. And again, if you go back and look at Black's Law Dictionary... Just to be clear, you're saying that the proximity of the person assaulted to the perpetrator is... In this case, yes. That's exactly because that was the whole point of putting him on the floor and restraining him was because he was right there. He could have told him just move away. He didn't. He put him underneath him so he could get to the cash drawer. I don't know how big this area was. Perhaps it was quite small and there wasn't another viable option. But in that sense... And what I think this illustrates is why it is such a fact-driven test that there really... It's not necessary, nor is it very... It's not possible to come up with a comprehensive definition. Even the Second Circuit has refused to do that, and they have gone the farthest in saying what physical restraint is not. If there's any further questions... Thank you, sir. Thank you very much. Commissioner Newlin. Thank you again, Your Honors. I think the government almost conceded that the guideline was so vague that, frankly, de novo review is appropriate here. But turning to the facts again, I think that Judge Greenaway put his finger on what the issue is here. If you look at a more recent Ninth Circuit case, Parker, which the government did cite in its brief, in that case the court said, however, the degree to which the victim was restrained was not appreciably different from that of bank tellers who are made to get down by robbers, who yell the command generally to everyone in the bank. Indeed, cases holding that a defendant physically restrained his victims usually involved a... on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere. And lastly, as Ms. McEwen said, he could have said move away or something like that. Well, I'm sure if he had said move here, move there, move away, the government would be arguing to you that that was physical restraint because he had the person move. In this case, there was no movement. There was no confining. It was simply knocking to the ground. Mr. Bell got about, went on with his improper and illegal and not acceptable business, and there was no physical restraint. Thank you very much. Thank you to both counsels. Very well argued case. And we'll take the matter.